## ROGER R. RUGRODEN AND OTHERS v. STATE OF MINNESOTA AND OTHERS.

170 N. W. (2d) 69.

July 11, 1969—No. 41325.

*Trench, Ericson, MacGregor, Lohmann, Walsh & O'Brien* and *Sheets, Greenstein, Hennings & Holisak,* for appellants.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *Donn D. Christensen,* Deputy Attorney General, and

*John C. Jeppesen,* Special Assistant Attorney General, for respondents.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

MURPHY, JUSTICE.

Appeal from a judgment of the district court denying relief to Roger R. and Yvonne I. Rugroden, plaintiffs, and Twin City Federal Savings and Loan Association, intervenor, in an action to require the State of Minnesota to commence eminent-domain proceedings to compensate for alleged denial of right of access to plaintiffs' property. This action follows a prior condemnation proceeding against plaintiffs' property, which proceeding was terminated by agreement and stipulation for settlement.

It appears that in February 1962 the state began condemnation proceedings to acquire certain property in the village of Lino Lakes, Anoka County, owned by plaintiffs and described as the NE 1/4 SE 1/4 of sec. 9, T. 31, R. 22, for an interstate controlled-access highway. This tract of land was bordered on the north by Oak Lane, which is a platted and improved street running in an east-west direction. On the east side, Duffee Drive provided access to the property. Duffee Drive is a platted and undeveloped street running generally in a north-south direction. Both of these streets are platted from the quarter lying immediately north of plaintiffs' property. The part of plaintiffs' property taken in the proceeding represents a wedge in the northwest part of the 40-acre area and extends in a northeast-southwest direction. The condemned property will be part of a nonaccess highway which will extend across the property to the north, resulting in the closing of plaintiffs' access to both Oak Lane and Duffee Drive.

It should be noted that the controlled-access highway was established pursuant to Minn. St. 160.08, subd. 3, which, so far as relevant here, provides:

"[The commissioner is] authorized to so design any controlled access highway, and to so regulate, restrict, or prohibit access as to best serve the traffic for which the highway is intended. * * * No person shall have any rights of ingress or egress to, from, or across controlled access highways to or from abutting lands, except at the designated points or roadways thereof where access is permitted by such road authorities upon such terms and conditions as such road authorities specify."

Minn. St. 160.08, subd. 5, provides in part:

"[The commissioner] may locate, establish, and construct controlled access highways * * *. [He is] authorized to provide for the elimination of grade intersections of controlled access highways with other existing streets or highways of any kind or nature whatsoever. The elimination may be accomplished by * * * closing off streets or highways at the right of way boundary of the controlled access highway. * * * After the establishment of any controlled access highway no other street or highway or private entry shall be opened into or connected with any controlled access highway without the consent and prior approval of the road authority having jurisdiction over the controlled access highway."

It should be further observed that the highway commissioner's petition for acquisition included "all right of access, being the right of ingress to and egress from all that part of the above described tract, not acquired herein * * *."

On May 18, 1962, the commissioners who had been appointed by the district court filed their award for damages to plaintiffs in the amount of $19,900. The state filed an appeal from the award to the district court, but no trial took place in that proceeding since the matter was settled by stipulation dated May 8, 1963. Plaintiffs agreed to accept as damages for the taking the sum of $18,900. The stipulation by which this agreement was expressed provides:

"The undersigned, in consideration of the payment of the

aforesaid sum of $4,925.00, together with the sums of $8,000.00 and $5,975.00 heretofore paid by the State, agree that said payments and acceptance thereof shall constitute full accord and satisfaction of any and all claims for damages, past, present and future, of any kind or nature, occasioned by the taking known as Parcel 69 from the tract affected herein, and all damages, if any, to remaining lands, hereby intending to forever settle any and all claims for the taking of said parcel."

Plaintiffs continued to use Oak Lane as an access to their property after the above settlement was made—in September 1962 they had proceeded to build a home on that portion of the property which the state had not taken. On August 11, 1967, when the construction of the new highway approached the stage where it was necessary to remove crossings and finish the highway ditches, plaintiffs were notified by letter that after September 11, 1967, they would no longer be permitted to use Oak Lane as an access to their property.

■ Thereafter, plaintiffs brought this action to compel the state to commence condemnation proceedings to recover damages for loss of right of access to their property. The defense, as already indicated, was that the petition and order for condemnation included right of access and that the stipulation and settlement of May 8, 1963, included damages for loss of right of access. It was contended by the state that when the individual plaintiffs accepted the settlement they were well aware of the fact that construction of the highway would eliminate the use of Oak Lane and Duffee Drive as a way of ingress to or egress from their property.

After trial the court found:

"That by said condemnation proceeding, the State of Minnesota obtained by such condemnation and eminent domain proceedings, all legal rights of access from said Parcel 69 not taken for highway purposes to the right-of-way of Interstate Highway Number 35-W and to Oak Lane and Duffy Drive adjacent to said Parcel 69.

"That the stipulation of settlement of the award of the Commissioners filed May 18, 1962, and the payment and acceptance of the amount of $18,900.00, constituted a full accord and satisfaction of all claims for damage, including all rights of access from said property to the right-of-way of Interstate Highway Number 35-W and Oak Lane and Duffy Drive adjacent to said property."

The record supports the finding. This conclusion is supported not only by the commissioner's notice of taking and the stipulation for settlement, but also by the admissions of the individual plaintiffs that the compensation they received included damages for their loss of access and that they were aware of the fact that after the taking they would have no way to get to a public road. Even more persuasive on the question of whether or not they have already been compensated for loss of access is the testimony of one of the court-appointed commissioners who testified that the award did include damages for loss of access and that in the negotiations with plaintiffs they were made aware of that fact. The issue as to whether or not plaintiffs had already been compensated for the alleged loss was one of fact. The finding of the trial court on this issue is entitled to the same weight as a verdict of the jury and will not be reversed on appeal unless manifestly contrary to the evidence. Bicanic v. J. C. Campbell Co. 220 Minn. 107, 19 N. W. (2d) 7; Fyfe v. G. N. Ry. Co. 223 Minn. 339, 27 N. W. (2d) 147.

■ The intervenor, Twin City Federal Savings and Loan Association, asserts damages by way of an interest in a mortgage on the property executed in September 1962 and later assigned to it. It contends that the making of the stipulation for settlement on May 8, 1963, could not take precedence over its prior acquired right. The simple answer to this is that the stipulation does not control the date of acquisition, since passage of title relates back to the date of filing of the highway commissioner's petition to acquire the property, which was May 7, 1962.

Independent-Consolidated School Dist. No. 27 v. Waldron, 241 Minn. 326, 63 N. W. (2d) 555.
Affirmed.