439 U.S. 419 (1979)
ARIZONA
v.
CALIFORNIA ET AL.
No. 8, Orig.
Supreme Court of United States.
Decided June 3, 1963.
Decree entered March 9, 1964.
Amended decree entered February 28, 1966.
Argued October 10, 1978.
Decided and supplemental decree entered January 9, 1979.
ON JOINT MOTION FOR ENTRY OF SUPPLEMENTAL DECREE AND MOTIONS FOR LEAVE TO INTERVENE.
Ralph E. Hunsaker argued the cause for complainant.
Douglas B. Noble, Deputy Attorney General of California, argued the cause for defendant State of California et al. Robert P. Will argued the cause for defendant Metropolitan Water District of Southern California et al.
With Messrs. Hunsaker, Noble, and Will on the responses of the State of Arizona et al. to both motions to intervene were Evelle J. Younger, Attorney General of California, Sanford N. Gruskin, Chief Assistant Attorney General, R. H. Connett and N. Gregory Taylor, Assistant Attorneys General, Edwin J. Dubiel, Emil Stipanovich, Jr., and Anita E. Ruud, Deputy Attorneys General, Roy H. Mann, Maurice C. Sherrill, R. L. Knox, Jr., Burt Pines, Gilbert W. Lee, John W. Witt, C. M. Fitzpatrick, Joseph Kase, Jr., Robert List, Attorney General of Nevada, Lyle Rivera, Chief Deputy Attorney General, Brian McKay, Deputy Attorney General, and Thomas G. Nelson.
With Mr. Noble on the response of the State of California et al. to the motion to intervene of the Colorado River Indian Tribes et al. were Messrs. Younger, Gruskin, Connett, Taylor, *420 Dubiel, Stipanovich, Ms. Ruud, Messrs. Sherrill, Knox, List, Rivera, McKay, and Nelson.
With Mr. Will on the response of the Metropolitan Water District of Southern California et al. to the motion to intervene of the Colorado River Indian Tribes et al. were Messrs. Pines, Lee, Witt, Fitzpatrick, and Kase.
Raymond C. Simpson argued the cause and filed briefs for the Fort Mojave Indian Tribe et al.
Lawrence D. Aschenbrenner argued the cause for the Cocopah Indian Tribe.
Terry Noble Fiske argued the cause for the Colorado River Indian Tribes.
Louis F. Claiborne argued the cause for the United States. On the memorandums for the United States were Solicitor General McCree, Assistant Attorney General Moorman, and Myles E. Flint.[*]
PER CURIAM AND SUPPLEMENTAL DECREE.
The United States of America, Intervenor, State of Arizona, Complainant, the California Defendants (State of California, Palo Verde Irrigation District, Imperial Irrigation District, Coachella Valley County Water District, The Metropolitan Water District of Southern California, City of Los Angeles, City of San Diego, County of San Diego), and State of Nevada, Intervenor, pursuant to Art. VI of the Decree entered in the case on March 9, 1964, at 376 U. S. 340, and amended on February 28, 1966, at 383 U. S. 268, have agreed to the present perfected rights to the use of mainstream water in each State and their priority dates as set forth herein. Therefore, it is hereby ORDERED, ADJUDGED, AND DECREED that the joint motion of the United States, the State of Arizona, the California Defendants, and the State of Nevada to enter a supplemental decree is granted and that said present *421 perfected rights in each State and their priority dates are determined to be as set forth below, subject to the following:
(1) The following listed present perfected rights relate to the quantity of water which may be used by each claimant and the list is not intended to limit or redefine the type of use otherwise set forth in said Decree.
(2) This determination shall in no way affect future adjustments resulting from determinations relating to settlement of Indian reservation boundaries referred to in Art. II (D) (5) of said Decree.
(3) Article IX of said Decree is not affected by this list of present perfected rights.
(4) Any water right listed herein may be exercised only for beneficial uses.
(5) In the event of a determination of insufficient mainstream water to satisfy present perfected rights pursuant to Art. II (B) (3) of said Decree, the Secretary of the Interior shall, before providing for the satisfaction of any of the other present perfected rights except for those listed herein as "MISCELLANEOUS PRESENT PERFECTED RIGHTS" (rights numbered 7-21 and 29-80 below) in the order of their priority dates without regard to State lines, first provide for the satisfaction in full of all rights of the Chemehuevi Indian Reservation, Cocopah Indian Reservation, Fort Yuma Indian Reservation, Colorado River Indian Reservation, and the Fort Mojave Indian Reservation as set forth in Art. II (D) (1)-(5) of said Decree, provided that the quantities fixed in paragraphs (1) through (5) of Art. II (D) of said Decree shall continue to be subject to appropriate adjustment by agreement or decree of this Court in the event that the boundaries of the respective reservations are finally determined. Additional present perfected rights so adjudicated by such adjustment shall be in annual quantities not to exceed the quantities of mainstream water necessary to *422 supply the consumptive use required for irrigation of the practicably irrigable acres which are included within any area determined to be within a reservation by such final determination of a boundary and for the satisfaction of related uses. The quantities of diversions are to be computed by determining net practicably irrigable acres within each additional area using the methods set forth by the Special Master in this case in his Report to this Court dated December 5, 1960, and by applying the unit diversion quantities thereto, as listed below:

 Unit Diversion
 Quantity Acre-Feet
 Indian Reservation Per Irrigable Acre
 __________________ ____________________
 Cocopah 6.37
 Colorado River 6.67
 Chemehuevi 5.97
 Ft. Mojave 6.46
 Ft. Yuma 6.67

The foregoing reference to a quantity of water necessary to supply consumptive use required for irrigation, and as that provision is included within paragraphs (1) through (5) of Art. II (D) of said Decree, shall constitute the means of determining quantity of adjudicated water rights but shall not constitute a restriction of the usage of them to irrigation or other agricultural application. If all or part of the adjudicated water rights of any of the five Indian Reservations is used other than for irrigation or other agricultural application, the total consumptive use, as that term is defined in Art. I (A) of said Decree, for said Reservation shall not exceed the consumptive use that would have resulted if the diversions listed in subparagraph (i) of paragraphs (1) through (5) of Art. II (D) of said Decree and the equivalent portions of any supplement thereto had been used for irrigation of the number of acres specified for that Reservation in said paragraphs and supplement and *423 for the satisfaction of related uses. Effect shall be given to this paragraph notwithstanding the priority dates of the present perfected rights as listed below. However, nothing in this paragraph (5) shall affect the order in which such rights listed below as "MISCELLANEOUS PRESENT PERFECTED RIGHTS" (numbered 7-21 and 29-80 below) shall be satisfied. Furthermore, nothing in this paragraph shall be construed to determine the order of satisfying any other Indian water rights claims not herein specified.

I

ARIZONA

A. Federal Establishments' Present Perfected Rights
The federal establishments named in Art. II, subdivision (D), paragraphs (2), (4), and (5) of the Decree entered March 9, 1964, in this case, such rights having been decreed in Art. II:

 Annual
 Diversions Net Priority
Defined Area of Land (acre-feet)[1] Acres[1] Date
_____________________ ________________ __________ ______________
1) Cocopah Indian Reservation 2,744 431 Sept. 27, 1917
2) Colorado River Indian Reservation 358,400 53,768 Mar. 3, 1865
 252,016 37,808 Nov. 22, 1873
 51,986 7,799 Nov. 16, 1874
3) Fort Mojave Indian Reservation 27,969 4,327 Sept. 18, 1890
 68,447 10,589 Feb. 2, 1911

B. Water Projects' Present Perfected Rights
(4) The Valley Division, Yuma Project in annual quantities not to exceed (i) 254,200 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of *424 43,562 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of 1901.
(5) The Yuma Auxiliary Project, Unit B in annual quantities not to exceed (i) 6,800 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 1,225 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of July 8, 1905.
(6) The North Gila Valley Unit, Yuma Mesa Division, Gila Project in annual quantities not to exceed (i) 24,500 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 4,030 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of July 8, 1905.

C. Miscellaneous Present Perfected Rights
1. The following miscellaneous present perfected rights in Arizona in annual quantities of water not to exceed the listed acre-feet of diversion from the mainstream to supply the consumptive use required for irrigation and the satisfaction of related uses within the boundaries of the land described and with the priority dates listed:

 Annual
 Diversions Priority
Defined Area of Land (acre-feet) Date
____________________ ____________ _________
7)
160 acres in Lots 21, 24, and 25, Sec. 29 and 960 1915
Lots 15, 16, 17 and 18, and the SW 1/4 of the
SE 1/4, Sec. 30, T.16S., R.22E., San Bernardino
Base and Meridian, Yuma County, Arizona.
(Powers)[2]
8)
Lots 11, 12, 13, 19, 20, 22 and S 1/2 of SW 1/4, 1,140 1915
Sec. 30, T.16S., R.22E., San Bernardino Base
and Meridian, Yuma County, Arizona. (United
States)[3]

*425
 Annual
 Diversions Priority
Defined Area of Land (acre-feet) Date
_____________________ ____________ _________
9)
60 acres within Lot 2, Sec. 15 and Lots 1 and 2, 360 1910
Sec. 22, T.10N., R.19W, G&SRBM.
(Graham)2a
10)
180 acres within the N 1/2 of the S 1/2 and the 1,080 1902
S 1/2 of the N 1/2 of Sec. 13 and the SW 1/4 of the
NE 1/4 of Sec. 14, T.18N., R.22W., G&SRBM.
(Hulet)2a
11)
45 acres within the NE 1/4 of the SW 1/4, the
SW 1/4 of the SW 1/4 and the SE 1/4 of the
SW 1/4 of Sec. 11, T.18N., R.22W., G&SRBM.
80 acres within the N 1/2 of the SW 1/4 of Sec.
11, T.18N., R.22W., G&SRBM. 1,050 1902
10 acres within the NW 1/4 of the NE 1/4 of the
NE 1/4 of Sec. 15, T.18N., R.22W., G&SRBM.
40 acres within the SE 1/4 of the SE 1/4 of Sec.15,
T.18N., R.22W., G&SRBM. (Hurschler)2a
12)
40 acres within Sec. 13, T.17N., R.22W., 240 1902
G&SRBM. (Miller)2a
13)
120 acres within Sec. 27, T.18N., R.21W.,
G&SRBM.
15 acres within the NW 1/4 of the NW 1/4, Sec. 810 1902
23, T.18N., R.22W., G&SRBM. (McKellips
and Granite Reef Farms)[4]
14)
180 acres within the NW 1/4 of the NE 1/4, the 1,080 1902
SW 1/4 of the NE 1/4, the NE 1/4 of the SW 1/4, the
NW 1/4 of the SE 1/4, the NE 1/4 of the SE 1/4, and
the SW 1/4 of the SE 1/4, and the SE 1/4 of the
SE 1/4, Sec. 31, T.18N., R.21W., G&SRBM.
(Sherrill & Lafollette)[4]

*426
 Annual
 Diversions Priority
Defined Area of Land (acre-feet) Date
_____________________ ___________ ________
15)
53.89 acres as follows: 318 1928
Beginning at a point 995.1 feet easterly of the
NW corner of the NE 1/4 of Sec. 10, T.8S.,
R.22W., Gila and Salt River Base and Meridian;
on the northerly boundary of the said
NE 1/4, which is the true point of beginning,
then in a southerly direction to a point on the
southerly boundary of the said NE 1/4 which is
991.2 feet E. of the SW corner of said NE 1/4
thence easterly along the S. line of the NE 1/4, a
distance of 807.3 feet to a point, thence N. 0°7′
W., 768.8 feet to a point, thence E. 124.0 feet
to a point, thence northerly 0°14′ W., 1,067.6
feet to a point, thence E. 130 feet to a point,
thence northerly 0°20′ W., 405.2 feet to a point,
thence northerly 63°10′ W., 506.0 feet to a
point, thence northerly 90°15′ W., 562.9 feet to
a point on the northerly boundary of the said
NE 1/4, thence easterly along the said northerly
boundary of the said NE 1/4, 116.6 feet to the
true point of the beginning containing 53.89
acres. All as more particularly described and
set forth in that survey executed by Thomas A.
Yowell, Land Surveyor on June 24, 1969.
(Molina)4a
16)
60 acres within the NW 1/4 of the NW 1/4 and
the north half of the SW 1/4 of the NW 1/4 of
Sec. 14, T.8S., R.22W., G&SRBM. 780 1925
70 acres within the S 1/2 of the SW 1/4 of the
SW 1/4, and the W 1/2 of the SW 1/4, Sec. 14,
T.8S., R.22W., G&SRBM. (Sturges)4a
17)
120 acres within the N 1/2 NE 1/4, NE 1/4 NW 1/4, 720 1912
Section 23, T.18N., R.22W., G&SRBM.
(Zozaya)4a

*427
 Annual
 Diversions Priority
Defined Area of Land (acre-feet) Date
____________________ ___________ _________
18)
40 acres in the W 1/2 of the NE 1/4 of Section 30, 960 1902
and 60 acres in the W 1/2 of the SE 1/4 of Section
30, and 60 acres in the E 1/2 of the NW 1/4 of
Section 31, comprising a total of 160 acres all in
Township 18 North, Range 21 West of the
G&SRBM. (Swan)4b
19)
7 acres in the East 300 feet of the W 1/2 of Lot 1 42 1900
(Lot 1, being the SE 1/4 SE 1/4, 40 acres more or
less), Section 28, Township 16 South, Range 22
East, San Bernardino Meridian, lying North of
U. S. Bureau of Reclamation levee right of way.
EXCEPT that portion conveyed to the United
States of America by instrument recorded in
Docket 417, page 150 EXCEPTING any portion
of the East 300 feet of W 1/2 of Lot 1
within the natural bed of the Colorado River
below the line of ordinary high water and also
EXCEPTING any artificial accretions waterward
of said line of ordinary high water, all of
which comprises approximately seven (7) acres.
(Milton and Jean Phillips)4b

2. The following miscellaneous present perfected rights in Arizona in annual quantities of water not to exceed the listed number of acre-feet of (i) diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use, whichever of (i) or (ii) is less, for domestic, municipal, and industrial purposes within the boundaries of the land described and with the priority dates listed:

 Annual
 Annual Consumptive
 Diversions Use Priority
Defined Area of Land (acre-feet) (acre-feet) Date
____________________ ___________ ____________ ________
20) City of Parker2b 630 400 1905
21) City of Yuma2b 2,333 1,478 1893

*428 II

CALIFORNIA

A. Federal Establishments' Present Perfected Rights
The federal establishments named in Art. II, subdivision (D), paragraphs (1), (3), (4), and (5) of the Decree entered March 9, 1964, in this case such rights having been decreed by Art. II:

 Annual
 Diversions Net Priority
Defined Area of Land (acre-feet)[5] Acres[5] Date
____________________ ________________ __________ _________
22)
Chemehuevi Indian Reservation 11,340 1,900 Feb. 2, 1907
23)
Yuma Indian Reservation 51,616 7,743 Jan. 9, 1884
24)
Colorado River Indian Reservation 10,745 1,612 Nov. 22, 1873
 40,241 6,037 Nov. 16, 1874
 3,760 564 May 15, 1876
25)
Fort Mojave Indian Reservation 13,698 2,119 Sept. 18, 1890

B. Water Districts' and Projects' Present Perfected Rights
26) The Palo Verde Irrigation District in annual quantities not to exceed (i) 219,780 acre-feet of diversions from the *429 mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 33,604 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of 1877.
27) The Imperial Irrigation District in annual quantities not to exceed (i) 2,600,000 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 424,145 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of 1901.
28) The Reservation Division, Yuma Project, California (non-Indian portion) in annual quantities not to exceed (i) 38,270 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 6,294 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of July 8, 1905.

C. Miscellaneous Present Perfected Rights
1. The following miscellaneous present perfected rights in California in annual quantities of water not to exceed the listed number of acre-feet of diversions from the mainstream to supply the consumptive use required for irrigation and the satisfaction of related uses within the boundaries of the land described and with the priority dates listed:

 Annual
 Diversions Priority
Defined Area of Land (acre-feet) Date
____________________ ___________ _________
29)
130 acres within Lots 1, 2, and 3, SE 1/4 of 780 1856
NE 1/4 of Section 27, T.16S., R.22E., S.B.B. & M.
(Wavers)[6]

*430
 Annual
 Diversions Priority
Defined Area of Land (acre-feet) Date
____________________ ___________ ________
30)
40 acres within W 1/2, W 1/2 of E 1/2 of Section 1, 240 1923
T.9N., R.22E., S.B.B. & M. (Stephenson)6a
31)
20 acres within Lots 1 and 2, Sec. 19, T.13S., 120 1893
R.23E., and Lots 2, 3, and 4 of Sec. 24, T.13S.,
R.22E., S.B.B. & M. (Mendivil)6a
32)
30 acres within NW 1/4 of SE 1/4, S 1/2 of SE 1/4, 180 1928
Sec. 24, and NW 1/4 of NE 1/4, Sec. 25, all in
T.9S., R.21E., S.B.B. & M. (Grannis)6a
33)
25 acres within Lot 6, Sec. 5; and Lots 1 and 2, 150 1913
SW 1/4 of NE 1/4, and NE 1/4 of SE 1/4 of Sec. 8,
and Lots 1 & 2 of Sec. 9, all in T.13S., R.22E.,
S.B.B. & M. (Morgan)6a
34)
18 acres within E 1/2 of NW 1/4 and W 1/2 of 108 1918
NE 1/4 of Sec. 14, T.10S., R.21E., S.B.B. & M.
(Milpitas)6a
35)
10 acres within N 1/2 of NE 1/4, SE 1/4 of NE 1/4, 60 1889
and NE 1/4 of SE 1/4, Sec. 30, T.9N., R.23E.,
S.B.B. & M. (Simons)6a
36)
16 acres within E 1/2 of NW 1/4 and N 1/2 of 96 1921
SW 1/4, Sec. 12, T.9N., R.22E., S.B.B. & M.
(Colo. R. Sportsmen's League)6a
37)
11.5 acres within E 1/2 of NW 1/4, Sec. 1, T.10S., 69 1914
R.21E., S.B.B. & M. (Milpitas)6a
38)
11 acres within S 1/2 of SW 1/4, Sec. 12, T.9N., 66 1921
R.22E., S.B.B. & M. (Andrade)6a
39)
6 acres within Lots 2, 3, and 7 and NE 1/4 of 36 1904
SW 1/4, Sec. 19, T.9N., R.23E., S.B.B. & M.
(Reynolds)6a

*431
 Annual
 Diversions Priority
Defined Area of Land (acre-feet) Date
____________________ ___________ _________
40)
10 acres within N 1/2 of NE 1/4, SE 1/4 of NE 1/4 60 1905
and NE 1/4 of SE 1/4, Sec. 24, T.9N., R.22E.,
S.B.B & M. (Cooper)6b
41)
20 acres within SW 1/4 of SW 1/4 (Lot 8), Sec. 19, 120 1925
T.9N., R.23E., S.B.B. & M. (Chagnon)[7]
42)
20 acres within NE 1/4 of SW 1/4, N 1/2 of SE 1/4, 120 1915
SE 1/4 of SE 1/4, Sec. 14, T.9S., R.21E., S.B.B.
& M. (Lawrence)[7]
2. The following miscellaneous present perfected rights in California in annual quantities of water not to exceed the listed number of acre-feet of (i) diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use, whichever of (i) or (ii) is less, for domestic, municipal, and industrial purposes within the boundaries of the land described and with the priority dates listed:

 Annual
 Annual Consumptive
 Diversions Use Priority
Defined Area of Land (acre-feet) (acre-feet) Date
____________________ ___________ ___________ _________
43)
City of Needles6b 1,500 950 1885
44)
Portions of: Secs. 5, 6, 7 & 8, T.7N., 1,260 273 1896
R.24E.; Sec. 1, T.7N., R.23E.; Secs. 4,
5, 9, 10, 15, 22, 23, 25, 26, 35, & 36,
T.8N., R.23E.; Secs. 19, 29, 30, 32 &
33, T.9N., R.23E., S.B.B. & M.
(Atchison, Topeka and Santa Fe Railway
Co.)6b
45)
Lots 1, 2, 3, 4, 5, & SW 1/4 NW 1/4 of 1.0 0.6 1921
Sec. 5, T.13S., R.22E., S.B.B. & M.
(Conger)[7]

*432
 Annual
 Annual Consumptive
 Diversions Use Priority
Defined Area of Land (acre-feet) (acre-feet) Date
____________________ ___________ ___________ ________
46)
Lots 1, 2, 3, 4 of Sec. 32, T.11S., R.22E., 1.0 0.6 1923
S.B.B. & M. (G. Draper)7a
47)
Lots 1, 2, 3, 4, and SE 1/4 SW 1/4 of Sec. 1.0 0.6 1919
20, T.11S., R.22E., S.B.B. & M.
(McDonough)7a
48)
SW 1/4 of Sec. 25, T.8S., R.22E., S.B.B. 1.0 0.6 1925
& M. (Faubion)7a
49)
W 1/2 NW 1/4 of Sec. 12, T.9N., R.22E., 1.0 0.6 1922
S.B.B. & M. (Dudley)7a
50)
N 1/2 SE 1/4 and Lots 1 and 2 of Sec. 13, 1.0 0.6 1916
T.8S., R.22E., S.B.B. & M.
(Douglas)7a
51)
N 1/2 SW 1/4, NW 1/4 SE 1/4, Lots 6 and 7, 1.0 0.6 1924
Sec. 5, T.9S., R.22E., S.B.B. & M.
(Beauchamp)7a
52)
NE 1/4 SE 1/4, SE 1/4 NE 1/4, and Lot 1, 1.0 0.6 1916
Sec. 26, T.8S., R.22E., S.B.B. & M.
(Clark)7a
53)
N 1/2 SW 1/4, NW 1/4 SE 1/4, SW 1/4 NE 1/4, 1.0 0.6 1915
Sec. 13, T.9S., R.21E., S.B.B. & M.
(Lawrence)7a
54)
N 1/2 NE 1/4, E 1/2 NW 1/4, Sec. 13, T.9S., 1.0 0.6 1914
R.21E., S.B.B. & M. (J. Graham)7a
55)
SE 1/4, Sec. 1, T.9S., R.21E., S.B.B. & M. 1.0 0.6 1910
(Geiger)7a

*433
 Annual
 Annual Consumptive
 Diversions Use Priority
Defined Area of Land (acre-feet) (acre-feet) Date
____________________ ___________ ___________ ________
56)
Fractional W 1/2 of SW 1/4 (Lot 6) Sec. 1.0 0.6 1917
6, T.9S., R.22E., S.B.B. & M.
(Schneider)7b
57)
Lot 1, Sec. 15; Lots 1 & 2, Sec. 14; 1.0 0.6 1895
Lots 1 & 2, Sec. 23; all in T.13S.,
R.22E., S.B.B. & M. (Martinez)7b
58)
NE 1/4, Sec. 22, T.9S., R.21E., S.B.B. & 1.0 0.6 1925
M. (Earle)7b
59)
NE 1/4 SE 1/4, Sec. 22, T.9S., R.21E., 1.0 0.6 1928
S.B.B. & M. (Diehl)7b
60)
N 1/2 NW 1/4, N 1/2 NE 1/4, Sec. 23, T.9S., 1.0 0.6 1912
R.21E., S.B.B. & M. (Reid)7b
61)
W 1/2 SW 1/4, Sec. 23, T.9S., R.21E., 1.0 0.6 1916
S.B.B. & M. (Graham)7b
62)
S 1/2 NW 1/4, NE 1/4 SW 1/4, SW 1/4 NE 1/4, 1.0 0.6 1919
Sec. 23, T.9S., R.21E., S.B.B. & M.
(Cate)7b
63)
SE 1/4 NE 1/4, N 1/2 SE 1/4, SE 1/4 SE 1/4, 1.0 0.6 1924
Sec. 23, T.9S., R.21E., S.B.B. & M.
(McGee)7b
64)
SW 1/4 SE 1/4, SE 1/4 SW 1/4, Sec. 23, NE 1/4 1.0 0.6 1924
NW 1/4, NW 1/4 NE 1/4, Sec. 26; all in
T.9S., R.21E., S.B.B. & M. (Stallard)7b
65)
W 1/2 SE 1/4, SE 1/4 SE 1/4, Sec. 26, T.9S., 1.0 0.6 1926
R.21E., S.B.B. & M. (Randolph)7b

*434
 Annual
 Annual Consumptive
 Diversions Use Priority
Defined Area of Land (acre-feet) (acre-feet) Date
____________________ ___________ ___________ _________
66)
E 1/2 NE 1/4, SW 1/4 NE 1/4, SE 1/4 NW 1/4, 1.0 0.6 1928
Sec. 26, T.9S., R.21E., S.B.B. & M.
(Stallard)7c
67)
S 1/2 SW 1/4, Sec. 13, N 1/2 NW 1/4, Sec. 1.0 0.6 1926
24; all in T.9S., R.21E., S.B.B. & M.
(Keefe)7c
68)
SE 1/4 NW 1/4, NW 1/4 SE 1/4, Lots 2, 3 & 1.0 0.6 1903
4, Sec. 25, T.13S., R.23E., S.B.B. & M.
(C. Ferguson)7c
69)
Lots 4 & 7, Sec. 6; Lots 1 & 2, Sec. 7; 1.0 0.6 1903
all in T.14S., R.24E., S.B.B. & M. (W.
Ferguson)7c
70)
SW 1/4 SE 1/4, Lots 2, 3, and 4, Sec. 24, 1.0 0.6 1920
T.12S., R.21E., Lot 2, Sec. 19, T.12S.,
R.22E., S.B.B. & M. (Vaulin)7c
71)
Lots 1, 2, 3 and 4, Sec. 25, T.12S., 1.0 0.6 1920
R.21E., S.B.B. & M. (Salisbury)7c
72)
Lots 2, 3, SE 1/4 SE 1/4, Sec. 15, NE 1/4 1.0 0.6 1924
NE 1/4, Sec. 22; all in T.13S., R.22E.,
S.B.B. & M. (Hadlock)7c
73)
SW 1/4 NE 1/4, SE 1/4 NW 1/4, and Lots 7 1.0 0.6 1903
& 8, Sec. 6, T.9S., R.22E., S.B.B. & M.
(Streeter)7c
74)
Lot 4, Sec. 5; Lots 1 & 2, Sec. 7; Lots 1.0 0.6 1903
1 & 2, Sec. 8; Lot 1, Sec. 18; all in
T.12S., R.22E., S.B.B. & M.
(J. Draper)7c

*435
 Annual
 Annual Consumptive
 Diversions Use Priority
Defined Area of Land (acre-feet) (acre-feet) Date
____________________ ___________ ___________ _________
75)
SW 1/4 NW 1/4, Sec. 5; SE 1/4 NE 1/4 and 1.0 0.6 1912
Lot 9, Sec. 6; all in T.9S., R.22E.,
S.B.B. & M. (Fitz)7d
76)
NW 1/4 NE 1/4, Sec. 26; Lots 2 & 3, 1.0 0.6 1909
W 1/2 SE 1/4, Sec. 23; all in T.8S.,
R.22E., S.B.B. & M. (Williams)7d
77)
Lots 1, 2, 3, 4, & 5, Sec. 25, T.8S., 1.0 0.6 1928
R.22E., S.B.B. & M. (Estrada)7d
78)
S 1/2 NW 1/4, Lot 1, frac. NE 1/4 SW 1/4, 1.0 0.6 1925
Sec. 25, T.9S., R.21E., S.B.B. & M.
(Whittle)7d
79)
N 1/2 NW 1/4, Sec. 25; S 1/2 SW 1/4, Sec. 1.0 0.6 1928
24; all in T.9S., R.21E., S.B.B. & M.
(Corington)7d
80)
S 1/2 NW 1/4, N 1/2 SW 1/4, Sec. 24, T.9S., 1.0 0.6 1928
R.21E., S.B.B. & M. (Tolliver)7d

III

NEVADA

A. Federal Establishments' Present Perfected Rights
The federal establishments named in Art. II, subdivision (D), paragraphs (5) and (6) of the Decree entered on *436 March 9, 1964, in this case, such rights having been decreed by Art. II:

 Annual
 Diversions Net Priority
Defined Area of Land (acre-feet) Acres Date
____________________ ___________ ___________ _________
81)
Fort Mojave Indian Reservation 12,534[8] 1,939[8] Sept. 18, 1890
82)
Lake Mead National Recreation 500 300[9] May 3, 1929[10]
 Area (The Overton Area of
 Lake Mead N.R.A. provided
 in Executive Order 5105)

It is ordered that Judge Elbert P. Tuttle be appointed Special Master in this case with authority to fix the time and conditions for the filing of additional pleadings and to direct subsequent proceedings, and with authority to summon witnesses, issue subpoenas, and take such evidence as may be introduced and such as he may deem necessary to call for. The Master is directed to submit such reports as he may deem appropriate.
The Master shall be allowed his actual expenses. The allowances to him, the compensation paid to his technical, stenographic, and clerical assistants, the cost of printing his report, and all other proper expenses shall be charged against and borne by the parties in such proportion as the Court may hereafter direct.
It is further ordered that if the position of Special Master in this case becomes vacant during a recess of the Court, THE *437 CHIEF JUSTICE shall have authority to make a new designation which shall have the same effect as if originally made by the Court.
It is further ordered that the motion of Fort Mojave Indian Tribe et al. for leave to intervene, insofar as it seeks intervention to oppose entry of the supplemental decree, is denied. In all other respects, this motion and the motion of Colorado River Indian Tribes et al. for leave to intervene are referred to the Special Master.
MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.
NOTES
[*] Donald D. Stark filed a brief as amicus curiae.
[1] The quantity of water in each instance is measured by (i) diversions or (ii) consumptive use required for irrigation of the respective acreage and for the satisfaction of related uses, whichever of (i) or (ii) is less.
[2] The names in parentheses following the description of the "Defined Area of Land" are used for identification of present perfected rights only; the name used is the first name appearing as the Claimants identified with a parcel in Arizona's 1967 list submitted to this Court.
[3] Included as a part of the Powers' claim in Arizona's 1967 list submitted to this Court. Subsequently, the United States and Powers agreed to a Stipulation of Settlement on land ownership whereby title to this property was quieted in favor of the United States.
[4] The names in parentheses following the description of the "Defined Area of Land" are the names of claimants, added since the 1967 list, upon whose water use these present perfected rights are predicated.
[5] The quantity of water in each instance is measured by (i) diversions or (ii) consumptive use required for irrigation of the respective acreage and for satisfaction of related uses, whichever of (i) or (ii) is less.
[6] The names in parentheses following the description of the "Defined Area of Land" are used for identification of present perfected rights only; the name used is the first name appearing as the claimant identified with a parcel in California's 1967 list submitted to this Court.
[7] The names in parentheses following the description of the "Defined Area of Land" are the names of the homesteaders upon whose water use these present perfected rights, added since the 1967 list submitted to this Court, are predicated.
[8] The quantity of water in each instance is measured by (i) diversions or (ii) consumptive use required for irrigation of the respective acreage and for satisfaction of related uses, whichever of (i) or (ii) is less.
[9] Refers to acre-feet of annual consumptive use, not to net acres.
[10] Article II (D) (6) of said Decree specifies a priority date of March 3, 1929. Executive Order 5105 is dated May 3, 1929 (see C. F. R. 1964 Cumulative Pocket Supplement, p. 276, and the Findings of Fact and Conclusions of Law of the Special Master's Report in this case, pp. 294-295).