No. 85-57

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

MICHAEL J. McCARTHY and MARGARET
L. RICE,

        Plaintiffs and Respondents,

   -vs-

TIMBERLAND RESOURCES, INC.,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Douglas & Bostock; William A. Douglas, Libby, Montana

    For Respondent:

        James A. Manley, St. Ignatius, Montana

---

Submitted on Briefs: June 28, 1985

Decided: December 31, 1985

Filed: **DEC 31 1985**

_Ethel M. Harrison_

---
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Respondents, McCarthy and Rice, purchasers of land on a contract for deed from appellant Timberland Resources, Inc., unable to record their deed in Sanders County for lack of acceptable description, brought an action against appellant to rescind the contract and for damages and attorneys fees. The District Court of the Fourth Judicial District granted their motion for summary judgment. Defendant Timberland Resources appeals.

We affirm.

The issue is whether a purchaser under a contract for deed may rescind the contract on the grounds the deed is not marketable when a county refuses to record the deed because the description, although it correctly describes the land, does not meet statutory requirements.

In 1978, defendant Timberland Resources, Inc., purchased land in Sanders County, Montana, from Trout Creek Land Company. The land was purchased in contiguous ten-acre parcels lying in two government survey sections. The deeds for these parcels were recorded in Sanders County on November 2, 1978. On July 16, 1979, appellant and respondents entered into a contract for deed to sell these parcels to the respondents. A notice of real estate contract was filed the same day in Sanders County.

The description of the land in the quit claim deed to defendant and in the notice of real estate contract are identical and are described as follows:

Tract 16--N½ S½ SW¼ SW¼ Sec. 23 and N½ S½ SE¼
SE ¼ and SE¼ NE¼ SE¼ SE¼ Sec. 22 T24N R32W-20

Principal meridian, Montana, Sanders County,
State of Montana



Although Sanders County had previously recorded both the deed from Trout Creek Land Company to Timberland Resources, Inc. and the Notice of Real Estate Contract from Timberland Resources, Inc. to plaintiffs it refused to file the deed from plaintiffs to a prospective buyer because of an Attorney General Opinion of May 8, 1981. That opinion, requested by the Sanders County Attorney, concluded that the description to be recorded in the future must be in compliance with section 76-3-401, MCA. That section provides:

> All divisions of land for sale other than a subdivision after July 1, 1974, into parcels which cannot be described as one-thirty-second or larger aliquot parts of a United States government section or a United States government lot must be surveyed by or under the supervision of a registered land surveyor.

The Attorney General opinion of May 8, 1981, concluded that section 76-3-401, MCA, required that the one-thirty-second or larger aliquot parts of a United States government section or a government lot must be contained in the same section or lot. We disagree with the Attorney

- 3 -

General opinion. The requirement of section 76-3-401, MCA, can be satisfied if the parcel contains not less than 20 acres and is an aliquot part of a government section or lot and if it is divisible into aliquot parts of a goverment section or lot and the parcel is physically contiguous, even though the aliquot parts may be located in more than one government section or lot. In this case, the parcel is 22½ acres and is not divisible as an aliquot part of a government section or lot.

While the parties here talk of "20 acre parcels," the description shows, and the District Court found, there was 22½ acres of land purportedly contracted for by the parties. On June 16, 1979, plaintiffs entered into a contract to purchase this land from defendant Timberland for investment purposes. The purchase price was $25,000. Plaintiffs made a downpayment of $1,500 and began making payments of $271 per month.

Plaintiffs later found a party willing to purchase the land for $28,000 but because Sanders County refused to record any document containing the form of the description in the contract and deed as used by defendant in its agreement, plaintiffs were unable to complete the sale. Plaintiffs then brought this action to rescind the contract, and for damages for loss of profit and for attorneys fees. Attorneys fees were provided for in the contract. Plaintiffs also asked for rescission for a mortgage on their land that defendant had represented as not affecting their land. The mortgage was removed prior to the hearing and is not part of this action.

Defendant maintains that the title is marketable and that Sanders County is unjustified and without legal authority to refuse to record the deed. Defendant takes the

- 4 -

position that the filing of the deeds and other matters with descriptions as contained in the contract between the plaintiffs and the defendant filed before the July 1981 Attorney General's Opinion bars the county from refusing to accept documents with the same description subsequent to that opinion. The defendant further argues that since it is the county that caused plaintiffs' problem because of the refusal to record plaintiffs' deed, plaintiffs should have brought their action against the county rather than the defendant. Sanders County has not been made a party to this action by any of these parties.

The problem with defendant's argument is that the plaintiffs as purchasers got a lawsuit with their contract. In order to get a recordable title plaintiffs are required to bring an action either for rescission as they have done here, or an action against the county to require it to record their deed. On October 5, 1983, defendant was served with process in this action to rescind the contract with the plaintiffs.

This Court has said on this subject of marketable title:

> The purchaser cannot be required to take a doubtful title, and title is declared "doubtful" when, among other things, "the probability of litigation ensuing against the purchaser in respect of the matter in doubt is considerable," as the court "will not compel the purchaser to buy a lawsuit," and "where there has been a decision by the court . . . adverse to the title . . . though the court thinks the decision wrong." Plaintiff's covenant was that on the day set for final performance, she would furnish an abstract showing "clear title" to the real property, which covenant required her to convey a "marketable title."

> The term "marketable title" is difficult of definition . . .. The most practical test is as to whether the title is such that a third person may reasonably raise a question after the time the contract would have been completed. If the condition of the title warrants such attack, the purchaser may reject the title as "unmarketable." (Citations omitted.)

Silfvast v. Asplund, et al. (1933), 93 Mont. 584, 596, 20 P.2d 631, 637.

The matter was heard by the District Court on August 14, 1984, more than ten months later and the court issued its order granting the summary judgment on November 5, 1984, more than a year later and still nothing was done to resolve the issue. During the time the defendant made no effort to correct the problems with the description either by a survey or by an action to compel Sanders County to accept the description.

From the record it is clear that the defendant could not deliver a marketable title to the plaintiffs.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 6 -

Mr. Justice Fred J. Weber specially concurs as follows:

I agree with the holding of the majority opinion that the judgment of the District Court is affirmed because the defendant was unable to deliver marketable title to the plaintiffs.

The majority states that the requirement of § 76-3-401, MCA, can be satisfied if the parcel contains not less than 20 acres and is an aliquot part of a government section or lot and if it is divisible into aliquot parts of a government section or a lot and the parcel is physically contiguous, even though the aliquot parts may be located in more than one government section or lot. I do not agree with that statutory interpretation.

The majority would approve the use of the following description: N½ S½ SW¼ SW¼ Sec. 23 and SE¼ NE¼ SE¼ SE¼ Sec. 22. Even though the two ten acre tracts are located in different sections, that would be held by the majority to be a sufficient description.

Section 76-3-401, MCA, clearly says that a parcel must be surveyed if it cannot be described as a one-thirty-second or larger aliquot part of a section. If the section in question is 640 acres as is the normal government section, then the smallest parcel would be a 20 acre aliquot part such as S½ SW¼ SW¼ of Sec. 23. That is the smallest parcel which may be described under the statute without a survey.

                                        _____
                                        Justice

7